Furman v. Rapelje.

## Mary A. Furman, Impleaded, etc., v. Frances Rapelje et al.

1. CONSIDERATION—*When Material.*—When the question in controversy is whether a lease to defendant is for his sole use, as he maintains, or was made to him in trust for the benefit of himself and others, it is not error to deny him the right to testify in regard to the consideration for the lease, as that is not material.

· 2. SALES—*Who Responsible for Proceeds of.*—Where two persons hold separate properties in trust for the same purpose and join in one instrument, disposing of them for a bulk consideration, it is proper to enter a decree against them jointly for the entire proceeds of such sale.

3. PURCHASERS—*When Protected Against Equities.*—Receiving a conveyance in payment of a pre-existing debt, is not sufficient to transfer a title against a superior equity, where there is a collision of *bona fide* claims.

4. PAYMENT—*When Enforced.*—Payment of the stipulated price for property sold will be enforced, although the title to the property was not transferred in the precise way stipulated in the contract.

Bill, to enforce a trust, for an accounting and injunction. Error to the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed November 30, 1896.

CHAS. WHEATON, attorney for Mary A. Furman, plaintiff in error.

HANCHETT & PLAIN,. attorneys for John C. Furman, plaintiff in error.

WILLIAM GEORGE and RUSSELL P. GOODWIN, attorneys for Cornelia Furman, plaintiff in error.

HOYNE, FOLLANSBEE & O'CONNOR, attorneys for Frances Rapelje, Eliza Cook, Mary Stebbins and Elizabeth O'Hara, defendants in error.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was a bill in equity to enforce an express trust by an accounting, and, incidentally, for an injunction.

One Cornelius Furman, being then an aged man, on August 10, 1887, executed and delivered to John C. Furman, one of his sons, a lease for a term of ninety-nine years, of a portion of certain premises belonging to him, and occupied by him as a homestead, in the city of Aurora, in Kane county, of the value of about $2,500, at an annual rental of ten dollars and the payment of taxes and assessments.

About fifteen months later, and about three weeks before his death, the said Cornelius executed and delivered to another of his sons, William C. Furman, as trustee, a judgment note, dated November 12, 1888, for $3,500, on which a judgment was confessed on November 14, 1888, and execution thereon was issued and levied upon the entire lot, of which the lease covered a part, and which comprised all the real estate owned by the said Cornelius.

The said Cornelius then died on December 5, 1888, leaving surviving him his said two sons, John C. and William C., and four daughters, Frances Rapelje, Eliza Cook, Mary Stebbins, and Elizabeth O'Hara, all children by his first wife, and Arther Rhodes, the son of a deceased daughter, also by his first wife, and Cornelia Furman, his second wife, besides some children by said second wife.

The said four daughters and grandson are the defendants in error, and the said widow, with the one son, John C., and his wife, Mary A., are the plaintiffs in error.

Shortly after the death of Cornelius, his said widow opened negotiations with the said children by his first wife to secure to herself the property which was the subject of said lease, and on which said judgment was a lien. It seems that said premises constituted all the estate left by

Cornelius, and were worth about $5,000, and that he left no debts. Those negotiations culminated on February 8, 1889, in a written agreement entered into on that day between the said sons, John C. and William C., of the one part, and the said widow, Cornelia, of the other part, wherein it was recited that William had sold and assigned to Cornelia the said judgment, and that Mary A. Furman, wife of John C., had assigned to Cornelia the said lease (the same having been previously assigned to said Mary A. by her said husband), and that the said William C. and John C. had agreed to procure for and deliver to the said Cornelia quit-claim deeds and releases of all claims against the estate of the said Cornelius, deceased, by each and every of his said children and heirs at law (by his first wife), naming them, for the consideration of three thousand dollars, agreed to be paid by the said Cornelia as follows : $2,000 in cash, $500 in her promissory note to William C., as trustee, payable one day after date, and the remaining $500 to be paid to the said William C. upon the delivery to her of said quit-claim deeds and releases within five months from that date.

The $2,000 was paid, and the $500 note was given by Cornelia as agreed, but there being a failure to deliver to her the quit-claim deeds and releases, as agreed by William and John, she subsequently procured all of said real estate to be sold under the execution issued upon said judgment, and bid it in at the sale, and afterward procured a sheriff's deed for the same.

The failure to deliver the quit-claim deeds and releases to Cornelia seems to have operated as a pretext, if not more, for Cornelia to fail to pay either the note she gave or the $500 agreed by her to be paid on the delivery of the deeds and releases; so that in fact she has never paid but the $2,000 cash down, of the $3,000 she agreed to pay, and of that $2,000, none of the defendants in error ever received any part. Immediately after the $500 note of Cornelia was delivered to William C., he transferred it to Mary A. Furman, the wife of John C., and she subsequently

brought suit upon it, which suit was pending when this bill was filed, and its further prosecution was enjoined by the decree herein entered.

Because of the failure of John and William to account with their sisters and the said Arthur Rhodes for any part of the money received by them from Cornelia, they (being the defendants in error) filed this bill to compel an accounting by John and William for such moneys, and by Cornelia for the $1,000 remaining unpaid by her under said agreement, and incidentally, to prevent the prosecution of the suit upon said note, and to prevent Cornelia from paying it to the said Mary A. Furman, and the decree gave substantially the relief asked.

The claim by the defendants in error was, that Cornelius Furman, being aged and threatened with death, undertook and intended, through the instrumentalities of said lease to John and judgment note to William, to create a trust in John and William for the benefit of the children of the said Cornelius by his first wife, including themselves. They did not admit the authority of either John or William to dispose of the lease and judgment note in the manner pursued, but were willing to ratify their action in that regard, upon being paid their share of the proceeds.

William C. Furman does not join in the prosecution of this writ of error. The decree found that, as to him, said judgment note for $3,500 was made by the said Cornelius Furman to the said William as trustee for the benefit of the defendants in error, and that he accepted said note upon the express trust that he was to distribute the proceeds thereof equally between them.

As to John C. Furman, the decree found that although said lease for ninety-nine years, made to him by his father, Cornelius, did by its terms give to said John the use of the premises therein described, yet it was the intention of Cornelius that John should hold the same for the use and benefit of the said children, and grandchild, of Cornelius by his first wife, and that John accepted the lease for such purpose and upon such trust.

Upon the facts and circumstances shown by the record, there can be but little, if any, doubt of the establishment of the express trust found by the decree to have been created in John by the giving and acceptance of the lease.

On the day before the death of Cornelius, which was before John had assigned the lease to his wife, and was while he held it, John said in the presence of Cornelius, the father, and of numerous persons, after the lease had been read in the presence of himself and them, and in answer to a question put to him by one of his sisters, that his father " wanted me to sell or dispose of the lease and divide the proceeds among his heirs by my mother, his first wife."

Although this admission was denied by John in his testimony, still it was proved by a very decided preponderance of evidence.

But it is contended that, this admission having been testified to, it was error to deny to John, as was done, the right to testify what the consideration of the lease was and what it was given for, and this contention is participated in, also, by Mary A. Furman.

The bill was to enforce an express parol trust. No evidence had been or was introduced by the complainants, of what the consideration for the lease was, or as to what the creator of the trust had declared it to be, but only what John, the trustee, had admitted the trust to be. John was allowed to, and did, testify that the lease was to himself for his own sole benefit, and to deny that he had ever made the admissions which the complainants' witnesses had testified were made by him; and we think he was properly denied to go further and testify to the consideration of the lease. Even if he had been permitted to go into a narration of what the consideration was, it would not have detracted from the force of his admission, nor added anything to his claim that he was the sole beneficiary under the lease.

It is contended further by John C. Furman, that it was error to find him to be jointly liable with William C. Furman, for the proceeds of the sale to Cornelia Furman. We do not so regard it. Both John and William were trustees,

and if not originally joint trustees, we think they became such by joining in one instrument disposing of the trust property for a bulk consideration.

Under the terms of the agreement they made with Cornelia Furman, they were to receive an entire consideration for the lease and the judgment. There does not appear to be any way of determining how much of that consideration was to be paid for the lease, or how much for the judgment. They chose to agree to accept an entire sum for what each severally held in trust for the same beneficiaries, and we think were properly held to be jointly, as well as severally, liable to account for that entire sum, less their share of it, so far as it has come to their or either of their hands, which is all that the decree charges them with.

As to the plaintiff in error, Mary A. Furman, it is objected that she was a good faith purchaser for value of the ninety-nine year lease made by Cornelius to her husband, John C. Furman.

The bill prayed no relief against her, and none was given by the decree, except to enjoin her from the prosecution of her suit upon the $500 note given by Cornelia Furman, (payable to William C. Furman, trustee,) in part consideration for the lease and judgment, and ordering that the note be canceled, in order that Cornelia Furman might not be imperiled by the payment to defendants in error of the remaining $1,000 agreed by her to be paid, of which sum the $500 note made a part. Mary A. Furman paid for that note by giving for it $500 out of the $1,500 which she received from her husband and William at the time Cornelia Furman paid the $2,000. She therefore used in the purchase of the note, a part of the trust funds, and unless she can be protected by her lack of notice that the lease was held in trust by her husband, and that she was a *bona fide* assignee thereof for value, she can not complain of the decree perpetually enjoining her from prosecuting her suit upon the note and requiring her to surrender it for cancellation.

By her answer she states that she bought the lease from

her husband on or about January 11, 1889, and that he assigned the same to her " for a good and valuable consideration," without stating what it was.

In her testimony she says the lease was assigned to her by her husband, " as payment for money that I (she) borrowed of the school trustees of Sugar Grove; the lease was given to me by my husband in payment of the money that I had borrowed, because I had borrowed it in my own name upon my note, which I think my husband signed with me. The note was secured by a mortgage on my farm, which I had owned some fourteen years; I got it of my husband; that note was dated June 13, 1887. My husband is now engaged in farming upon that farm." And she further testified that she paid on account of the mortgage on her farm to secure her and her husband's note, all of the $1,500 that remained after paying $500 for the $500 note. She also testified that she let her husband have all but $300 of the $1,882.25 borrowed on the security of her farm.

She therefore paid no new consideration for the lease. It was given to her by her husband simply as a protection against an incumbrance she had placed upon her farm more than a year and a half before, for his benefit, and which she had not paid. She parted with nothing on the faith of the lease, and lost nothing by taking the assignment of the lease.

Under such circumstances we can not regard her as a bona fide purchaser of the lease. The rule applicable to the assignment of negotiable instruments does not apply here.

" A conveyance of real or personal property as security for an antecedent debt does not, upon principle, render the transferee a bona fide purchaser, since the creditor surrenders no right, and places himself in no worse legal position than before." 2 Pomeroy's Eq. Juris., Sec. 749.

" Receiving a conveyance merely in payment of a pre-existing debt, is not sufficient where there is a collision of bona fide claims." Met. Bank v. Godfrey, 23 Ill. 579.

Moreover, when we consider all the evidence contained in the record, and the circumstance that the $500 note was

payable to William as " trustee "—which she testified she supposed meant that it was " held in trust for others "—the presumption is strong that she had notice of the trust relationship held by both her husband and William.

The decree, so far as she is concerned, affects only her right to the $500 note, and requires nothing of her concerning the $1,000 which remained to her, out of the $1,500 which she received.

That her husband, John C. Furman, is charged by the decree with that sum as having come to him and William, is no ground for her to complain, and our conclusion is that the decree, so far as it affects her, is right.

The objections by Cornelia Furman to the decree against her, which provides that she shall pay to the plaintiffs in error the $1,000 remaining unpaid under her agreement with John C. and William C. Furman, less the sum of sixty-nine dollars expended by her in perfecting her title under the sheriff's deed, with interest, etc., may be briefly dismissed. Her main objection is, that her demurrer to the bill as amended should have been sustained, because there was no allegation that the quit-claim deeds mentioned in her contract with William and John, were ever tendered to her.

We do not think such an allegation was necessary. The bill was not one for specific performance, but to enforce a trust and for an accounting. The tender of such deeds became unnecessary by reason of the perfecting of the title in Cornelia Furman by a sheriff's sale and deed to her, under the $3,500 judgment, there being no debts against the estate of Cornelius. That sale and deed gave her the absolute title to the property, and there is no attempt by the decree to disturb her in her title so acquired.

Indeed, the whole theory of the bill and decree is based upon a ratification of the title by all persons who might possibly attack it. It would be a useless formality to require the tender of the deeds, and equity will not require that to be done, which, if done, would be useless.

There is no claim asserted against Cornelia Furman, and

the decree establishes none, except that she shall pay the remainder of her contract price.

Although she has not got the title in the precise way the contract contemplated, she has obtained it in a method which the contract gave her the means of doing, and it is only equitable that she should pay for it. The whole object of the contract, which was to secure to her the title to the property, has been accomplished, and we see no reason for a further consideration of her objections.

Without discussing every objection urged against the decree by each of the plaintiffs in error, we have considered them all, and upon such consideration we think the decree is substantially correct, and that it should be affirmed.